UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL SCOTT OVERTON,

                    Petitioner,                    Case No. 2:17-cv-10892
v.                                                 Hon. Nancy G. Edmunds

TONY TRIERWEILER,

                    Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND (2) GRANTING A PARTIAL CERTIFICATE OF APPEALABILITY**

Randall Scott Overton, ("Petitioner"), a Michigan prisoner, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial held in the Wayne Circuit Court of one count of first-degree criminal sexual conduct (CSC-1), MICH. COMP. LAWS § 750.520b(1)(a), one count of second-degree criminal sexual conduct (CSC-2), MICH. COMP. LAWS § 750.520c(1)(a), and three counts of gross indecency. MICH. COMP. LAWS § 750.338b. The trial court sentenced Petitioner to concurrent prison terms of 25 to 40 years for the CSC-1 conviction, 29 months to 15 years for the CSC-2 conviction, and 17 months to 5 years for each gross indecency conviction.

The petition, filed through counsel, raises thirteen claims: (1) the prosecutor presented insufficient evidence to demonstrate that Petitioner engaged in the sexual penetration of another person as required by the CSC-1 statute, (2) Petitioner lacked constitutional notice that "sexual penetration" under the CSC-1 statute included acts of defendant-directed self-penetration by the victim, (3) the jury instructions allowing for a conviction of CSC-1 based on defendant-directed self-penetration were erroneous, (4)

1

Petitioner's 25-year minimum sentence for his CSC-1 conviction is grossly disproportionate to the severity of his crime, (5) the evidence was insufficient to sustain Petitioner's CSC-2 conviction, (6) Petitioner lacked constitutional notice that his conduct violated the gross indecency statute, (7) the evidence was insufficient to sustain Petitioner's gross indecency conviction, (8) the jury instructions regarding gross indecency were erroneous, (9) Petitioner was denied his right to present a defense when he was precluded from admitting his videotaped statement to police, (10) Petitioner was denied the effective assistance of counsel at trial, (11) Petitioner was denied the effective assistance of appellate counsel, (12) the cumulative effect of Petitioner's counsels' errors denied Petitioner his right to a fair trial, and (13) Petitioner can demonstrate cause and prejudice for failing to raise his post-conviction claims in his appeal of right.

The Court will deny the petition because Petitioner's claims are without merit. The Court will grant Petitioner a certificate of appealability with respect to the claim that he lacked notice that his conduct violated the CSC-1 statute, but it will deny a certificate with respect to his other claims.

## I. Background

Petitioner was the boyfriend of the victim's mother, his co-defendant Pope. The charges concerned allegations that Petitioner ordered the victim to penetrate her vagina with her finger (the basis for the CSC-1 charge), rubbed ointment on the victim's pubic area and shaved her pubic hair (the basis for the CSC-2 charge), and made the victim submit to "virginity checks" (the basis for the gross indecency charges). Petitioner was convicted as indicated above. Pope was convicted of obstruction of justice for instructing

the victim to reword her statement and conceal information for a Kids Talk interview

arranged by Child Protective Services.

The Michigan Court of Appeals summarized the evidence presented at the joint

trial as follows:

> Pope and Overton had been in a relationship from the time the victim
> was age four or five. When the victim was a young adolescent, Pope
> examined the victim's genital area for a "virginity check." Overton also
> examined the victim's genital area at that time. Subsequently, Overton
> required the victim to submit to periodic "virginity checks," during which
> Overton visually inspected her genitals. The victim testified that these
> incidents occurred while she was alone with Overton at his residence. On
> the basis of this testimony, Overton was convicted of three counts of gross
> indecency.
>
> The victim also testified that Overton once used a mirror to visually
> observe the victim's genitals while instructing the victim to insert her finger
> inside her vagina, under the pretext of teaching her how to use a tampon.
> This testimony was the basis for Overton's CSC-I conviction. The victim
> further testified that on another occasion, Overton shaved her pubic hair
> and then applied ointment to the area. This testimony was the basis for
> Overton's CSC-II conviction.
>
> After the victim disclosed the sexual abuse, investigator Amanda
> Doss of Children's Protective Services (CPS) arranged for a forensic
> interview of the victim at a Kids Talk agency. Doss informed Pope that
> neither Pope nor Overton was allowed to drive the victim to the agency
> for the interview. Nonetheless, Pope drove the victim to the agency.
> According to the victim, on the night before the interview and on the ride to
> the interview, Pope instructed her to reword her statements and to conceal
> information. Pope's disregard of Doss's instructions and her attempt to
> influence the victim's statements were the basis for her conviction of
> obstruction of justice.

*People v. Overton,* 2013 WL 5857775, at *1 (Mich. Ct. App. Oct. 31, 2013).

Following his conviction and sentence, Petitioner filed a motion for a new trial. The

motion asserted claims regarding the sufficiency of the evidence presented as to each of

Petitioner's convictions, that Petitioner did not have constitutionally adequate notice that

the conduct at issue violated the gross indecency statute, that the jury instructions on the

elements of the offenses of conviction were erroneous, that Petitioner's 25-year mandatory minimum sentence for his CSC-1 conviction violated the Eighth Amendment, that the court erred in excluding the video recording of Petitioner's interview with police, and that Petitioner's trial counsel was ineffective. Dkt. 5-15 and 5-16. The trial court held oral argument on the motion and denied it on the record. Dkt. 5-18 and 5-19.

Petitioner then filed a claim of appeal. His brief on appeal raised the following claims:

> I. The evidence produced at trial by the prosecution is legally insufficient to convict Mr. Overton of first degree criminal sexual conduct.
>
> II. The evidence produced at trial by the prosecution is legally insufficient to convict Mr. Overton of second degree criminal sexual conduct.
>
> III. Mr. Overton's due process rights were violated because the jury instructions regarding second degree criminal sexual conduct were deficient and the jury verdict may not have been unanimous.
>
> IV. Mr. Overton's convictions for gross indecency should be vacated because the evidence presented at trial was insufficient to sustain the convictions.
>
> V. Mr. Overton's due process rights were violated because the jury instructions were deficient. Further, Mr. Overton did not have constitutionally adequate notice that the behavior at issue violated the gross indecency statute.
>
> VI. Mr. Overton was denied his constitutional right to the effective assistance of counsel.
>
> VII. The trial court abused its discretion and violated Mr. Overton's due process right to present a defense by precluding Mr. Overton from presenting the entire video interview under the rule of completion.
>
> VIII. Mr. Overton's mandatory 25-year minimum sentence constitutes cruel or unusual punishment in violation of the state and federal constitutions.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion. *Overton*, 2013 WL 5857775.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court ordered oral argument on the application, but it denied the application over the dissent of the two Justices. *People v. Overton*, 857 N.W.2d 11 (Mich. 2014) (Table). Justice McCormick expressed an opinion that the CSC-1 statute did not encompass cases in which a victim engaged in sexual penetration of herself, and allowing for such an interpretation would give rise to potential overbreadth concerns and potentially criminalize innocent acts "such as a mother instructing her daughter about genital hygiene." *Id.*

Picking up on this line of reasoning Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

I. Mr. Overton has insufficient notice that his conduct was unlawful because the Michigan Courts improperly broadened the precise and narrow definition of "sexual penetration" under the Michigan criminal sexual conduct statute to include self-penetration, and thereby retroactively criminalized his behavior – violating the defendant's right to due process of the law.

II. Jury instructions regarding the first-degree criminal sexual conduct were erroneous and violated the defendant's right to due process of the law.

III. Defendant did not receive effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments.

IV. Defendant did receive effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments because appellate counsel failed to raise meritorious appellate issues.

V. There is both cause and prejudice that excuses the failure of the defendant to raise the issues in this motion on direct appeal.

The trial court denied the motion for relief from judgment. The opinion rejecting the motion both discussed the merits of Petitioner's post-conviction claims, and it also found

that review was barred because Petitioner failed to demonstrate actual prejudice under Michigan Court Rule 6.508(D)(3)(b). Dkt. 5-23.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals that raised the same claims, but the court denied the application because Petitioner "failed to establish that the trial court erred in denying his motion for relief from judgment." Dkt. 5-24; *People v. Overton*, No. 330875, Mich. Ct. App. Order (April 28, 2016). Petitioner applied for leave to appeal this decision to the Michigan Supreme Court, but the appeal was denied under Michigan Court Rule 6.508(D). Dkt. 5-25; *People v. Overton*, 888 N.W.2d 77 (Mich. 2016) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

#### A. Procedural Default

Respondent contends that several of Petitioner's claims are procedurally defaulted because the claims were not raised on direct review. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. See *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding

against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

The Court deems it more efficient to proceed directly to the merits of the claims raised by Petitioner on state post-conviction review. First, Petitioner alleges that his attorneys were ineffective for failing to preserve the defaulted claims by presenting them on direct review. A discussion of whether Petitioner's appellate counsel was ineffective for omitting those claims entails at least in some limited way a discussion regarding the relative merit of the omitted claims. Second, the default argument regarding several of Petitioner's claims is complicated to the extent Petitioner asserts that the error was a result of the grounds of decision by the Michigan Court of Appeals on direct review. Petitioner asserts that the construction of the CSC-1 and gross indecency statutes given by the Michigan Court of Appeals on direct review gave rise to his lack of notice claims. Accordingly, the Court will proceed to the merits of Petitioner's claims.

B. Claims Related to "Sexual Penetration" Element of CSC-1

Petitioner raises several claims related to the fact that his CSC-1 conviction was founded on the allegation that he directed the victim to insert her finger into her vagina. He asserts that an act of sexual penetration under the statute requires one person to penetrate another person. Because the only evidence presented at trial indicated that the victim penetrated herself, Petitioner argues that it was constitutionally insufficient to sustain his CSC-1 conviction. He relatedly asserts that the jury instruction allowing for a

8

conviction on the basis of defendant-directed self-penetration was erroneous. Finally, Petitioner asserts that the grounds for the Michigan Court of Appeals decision rejecting these two claims—that defendant-directed self-penetration counts as sexual penetration—amounted to an unforeseeable judicial expansion of the statute, and therefore it violated his due process right to fair notice. None of the arguments have merit.

## 1. Sufficiency of the Evidence

Petitioner's sufficiency-of-the-evidence claim is a non-starter because it is based on a premise of state law rejected by the state courts. The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. See *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Therefore, a federal court on habeas review must distinguish true sufficiency of evidence claim from state law claims which are disguised as such. *Id.* (citing *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)).

Here, Petitioner is not challenging the sufficiency of the evidence presented to prove the elements of his first-degree conviction as those elements were defined by the state court. In other words, he does not challenge the sufficiency of the evidence presented to show that he directed the victim to penetrate her own vagina. Rather, he asserts that there was no evidence presented to show that one person sexually penetrated another person. That is, at root, he is pressing here his construction of the

elements of the CSC-1 statute that was rejected by the Michigan Court of Appeals on direct review. He cannot do so because the Court must defer to the state court's construction of the elements of the CSC-1 statute that it made in this case. See e.g. *Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998).

*2. Jury Instructions*

Petitioner's jury instruction claim obviously fails for the same reason. For an error in the jury instructions to warrant habeas relief, it "must be so egregious that [it] render[ed] the entire trial fundamentally unfair." *White v. Mitchell*, 431 F.3d 517, 533 (6th Cir. 2005). Here, Petitioner is foreclosed from arguing that the challenged instruction was an incorrect statement of Michigan law let alone that it was egregiously wrong.

*3. Fair Notice*

Petitioner's fair-notice claim presents his strongest challenge to his CSC-1 conviction. He asserts that he was deprived of fair notice that a defendant-directed self-penetration can constitute sexual penetration under the CSC-1 statute.

The trial court addressed the merits of this claim on post-conviction review:

> [T]he Court of Appeals did not broaden the definition as Defendant suggest. Rather, the definition is simply broad enough to include self-penetration by coercion. In this regard, engaging in sexual penetration with the victim for purposed of the CSC-1 statute, does not necessitate that Defendant, himself, must actually conduct the intrusion. In other words, the fact that the victim's finger was not intruded into the body of another person, but rather, into her own, is immaterial, since the prohibited conduct does not require any part of Defendant's body to be in contact with the victim; the coercing of self-penetration is an offense under the statute. Therefore, Defendant had sufficient notice that his conduct was unlawful.

Dkt. 5-23 at 4.

The Supreme Court has clearly established that the Due Process Clause requires "that a criminal statute give fair warning of the conduct which it prohibits." *Bouie v. City of*

*Columbia*, 378 U.S. 347, 350 (1964). Relevant here, due process prohibits courts from applying a novel construction of a criminal statute to conduct or behavior "that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266-67 (1997). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267. A "determination whether a criminal statute provides fair warning of its prohibitions must be made on the basis of the statute itself and the other pertinent law, rather than on the basis of an ad hoc appraisal of the subjective expectations of particular defendants." *Bouie*, 378 U.S. at 355, n. 5.

*Bouie's* due process restriction on judicial interpretation of criminal statutes is limited to those that are "'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Rogers v. Tennessee*, 532 U.S. 451, 461 (2001) (quoting *Bouie*, 378 U.S. at 354). Unlike judicial review of retroactive legislation under the Ex Post Facto Clause, review of a court's application of a criminal statute to a particular defendant, which by its very nature is retroactive, "rest[s] on core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Rogers*, 532 U.S. at 459.

In pertinent part, Michigan's CSC-1 statute prohibits a person from "engag[ing] in sexual penetration with another person" where the other person is under 13 years of age. MICH. COMP. LAWS § 750.520b(1)(a). "Sexual penetration" is defined in a separate provision as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital

or anal openings of *another person's body*, but emission of semen is not required." MICH. COMP. LAWS § 750.520a(r) (emphasis added). Prior to the date of Petitioner's conduct, Michigan law interpreted this section as including acts where a defendant directs a person to engage in sexual penetration of a third person. See *People v. Hack*, 219 Mich. App. 299, 303 (1986) (defendant properly convicted of CSC-1 where he directed three-year-old girl to perform fellatio on one-year-old boy).

Combining the language of the two statutory provisions together and removing the alternative forms of sexual penetration not at issue here yields the following language: "A person is guilty of criminal sexual conduct in the first degree if he engages in [any intrusion, however slight, of any part of a person's body into the genital or anal openings of another person's body] with another person [under 13 years of age]." The Michigan Court of Appeals explained rather plainly how Petitioner's conduct satisfied the requirements of the statute: "Overton was engaged in the intrusion of a human body part—a finger—into the genital opening of another person's body—the victim's vagina—when the victim obeyed Overton's instruction to digitally penetrate herself under the pretext of teaching her how to use a tampon." *Overton*, 2013 WL 5857775, at *3.

It was reasonable for the trial court to find that Petitioner could expect that his conduct was fairly within the scope of the statute. It is true that whether defendant-directed self-penetration by a victim constituted sexual penetration had not been addressed by Michigan law at the time of Petitioner's conduct, but "[a] ruling on an unsettled issue of state law will rarely if ever be unexpected and indefensible." *Niederstadt v. Nixon*, 505 F.3d 832, 837 (8th Cir. 2007). Conduct will be deemed fairly within the scope of a judicial construction of a criminal statute unless that construction is "'unexpected and indefensible

12

by reference to the law which had been expressed prior to the conduct in issue.'" *Rogers*, 532 U.S. at 457 (quoting *Bouie*, 378 U.S. at 354).

In *Hack* the language at issue had already been interpreted to include actions where a defendant was not a physical participant in the act but verbally directed one child to sexually penetrate another child. While *Hack* obviously did not involve defendant-directed self-penetration by the victim, it was not unexpected or indefensible that the state court would read "another person" as referring only to someone other than defendant as opposed to someone other than the penetrator. The construction excludes from sexual penetration situations where a defendant penetrates himself in the presence of the victim. Like *Hack*, the act here still involved the defendant directing a person to sexually penetrate someone other than himself.

In fact, another court interpreting identical statutory language found that sexual penetration included acts of defendant-directed self-penetration by the victim. See *People of Guam v. Quidachay*, 374 F.3d 820, 822 (9th Cir. 2004) ("Quidachay [holding the victim at gunpoint] forced his victim to penetrate herself. Doing so he engaged in sexual penetration with her. Her finger became an object operating at his command. He successfully and criminally intruded with this object into a body which was not his. . . . He engaged in sexual penetration with the victim."); see also *North Carolina v. Green*, 746 S.E.2d 457, 463 (2013) ("[W]e hold that the act of forcing a victim to self-penetrate constitutes 'engag[ing] in a sexual act . . . with another person.'"); *Florida v. Kirby*, 625 So. 2d 51, 55 (Fla. Ct. App. 1993).

The construction of the statute by the Michigan Court of Appeals here was not so unexpected or indefensible so as to require the trial court to grant him relief with respect

13

to this claim. Courts outside of Michigan had already done so prior to Petitioner's conduct. The rejection of this claim did not involve an unreasonable application of the clearly established Supreme Court standard.

## C. Proportionality of Sentence

Petitioner next asserts that his 25-year minimum sentence for his CSC-1 conviction is grossly disproportionate to his conduct in violation of the Eighth Amendment.

The Michigan Court of Appeals rejected this claim on the merits:

> Overton argues that the statutory mandatory minimum sentence of 25 years for CSC-I is unconstitutionally cruel or unusual. This Court has considered this issue and has concluded that the mandatory sentence in MCL 750.520b(2)(c) does not constitute cruel and/or unusual punishment. *People v. Benton*, 294 Mich. App. 191, 207 (2011). We are bound to follow *Benton*. MCR 7.215(J)(1). Accordingly, we reject defendant's argument that his sentence on the CSC-I count is unconstitutional.

*Overton,* 2013 WL 5857775, at *16.

The Eighth Amendment does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; see also *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"

*Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).

Petitioner characterizes his conduct as being less harmful than more typical cases of CSC-1 involving young victims. He likens his case to the non-culpable case of a parent instructing his child regarding hygiene. That was not what happened here. It is true that the first "virginity check" was performed by the victim's mother in Petitioner's presence. But the acts that formed the basis for the CSC-1 charges against Petitioner all occurred while Petitioner—who was not the victim's parent or guardian—was alone with the victim at his house. See Dkt 5-10 at 50-53, 61. After learning that the victim had used a tampon, id. at 62-63, Petitioner ordered her to "put [her] finger inside" so he could "see how far it would go in." Id. at 66. Nor was this an isolated incident. Petitioner had the young victim model underwear he bought for her, once snapping the elastic waistband. Id. at 59, 61-62. On another occasion he cupped the victim's breasts, commenting on her development. Id. at 60. These incidents occurred on threat of punishment. Id. at 61. There is nothing grossly disproportionate between a 25-year minimum sentence and a penetrative sexual assault that occurred in what might be reasonably viewed as a pattern of behavior amounting to sexual grooming. See Dkt. 5-14 at 23. The claim was reasonably rejected by the state court.

## D. Sufficiency of Evidence as to Second-Degree Criminal Sexual Conduct

Petitioner's next claim asserts that constitutionally insufficient evidence was presented to prove that he had a sexual purpose when he shaved the victim's pubic area and applied ointment there to sustain his CSC-2 conviction.

The Michigan Court of Appeals rejected the claim on the merits:

Overton was convicted of violating MCL 750.520c(1)(a), which prohibits a person from engaging in sexual contact with another person under 13 years of age. "Sexual contact" is defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose[.]" MCL 750.520a(q).

At trial, the victim testified that Overton shaved her pubic area and then rubbed ointment on the area, touching her genitals. This testimony was sufficient to allow the jury to find that Overton intentionally touched the victim's intimate parts. Overton contends, however, that the evidence was insufficient to prove that the touching was done for the purpose of sexual arousal or gratification, or for a sexual purpose, because the purpose of the touching was to remove unwanted hair from the victim's body so that it would not show through her bathing suit and to then heal shaver burns that resulted from the shaving.

The term "sexual contact" incorporates the requirement that the defendant's conduct "reasonably be construed as being for the purpose of sexual arousal or gratification[.]" MCL 750.520a(q) (emphasis added). "The statute's language is clear and its inclusion of a reasonable person standard provides a structure to guide the jury's determination of the purpose of the contact." People v. Piper, 223 Mich. App. 642, 647 (1997). "Consequently, . . . a jury is properly limited to a determination whether the defined conduct, when viewed objectively, could reasonably be construed as being for a sexual purpose." Id. Here, the victim testified that she only intended to shave her "bikini area," that she was satisfied with her own shaving, and that she did not want Overton's help. According to the victim, Overton looked at the area, told her that she had missed spots, and made her lie down on the bed and open her legs. The victim stated that Overton "was just supposed to do . . . the part where . . . he could see," but he instead "did the whole bottom part." The victim also stated that she could have rubbed the ointment on the shaved area herself and she did not want Overton to do it. Given the victim's testimony that she was satisfied with her own shaving, that Overton's help was not wanted and exceeded what was necessary to accomplish the victim's intended purpose, and that there was no reason why the victim could not have applied the ointment herself, which is what she preferred, the jury could reasonably infer that Overton's conduct was neither wanted nor necessary and, viewed objectively, could reasonably be construed as having a purpose of sexual arousal or gratification. Accordingly, the evidence was sufficient to support Overton's conviction of second-degree criminal sexual conduct.

Overton, 2013 WL 5857775, at *4.

The relevant clearly established Supreme Court standard for sufficiency-of-the-evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A reviewing court may not "reweigh the evidence or redetermine the credibility of the witnesses" because such an assessment "is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). Because the claim was rejected on the merits by the state court, Petitioner must show that the state court's application of this standard was unreasonable. See 28 U.S.C. § 2254(d)(2).

Petitioner asserts that there was nothing objectively sexual about the contact, and that no evidence was offered to show that his actions were a pretext for hidden sexual gratification. The Court does not review the evidence in a light most favorable to Petitioner, however. In fact, it is well settled that when a defendant "offer[s] an innocent explanation for the incriminating facts proved by the government, the jury is free to disbelieve [it]." *United States v. Hughes*, 505 F.3d 578, 594 (6th Cir. 2007) (quoting *United States v. Schreane*, 331 F.3d 548, 562 (6th Cir.2003)). Especially in light of the fact that Petitioner performed these actions when he was alone with the victim, and in light of his other conduct such as cupping the victim's breasts and having her model underwear, Dkt 5-10 at 59-62, the jury was free to conclude beyond a reasonable doubt that the unrequested and unwanted shaving and ointment were pretextual contacts performed for purposes of sexual gratification. The claim is without merit.

E. Claims Related to Gross Indecency Conviction

Petitioner raises three claims with respect to his gross indecency convictions. He claims that as applied to the virginity checks he did not have adequate notice that the conduct was illegal because the acts were not overtly sexual. He relatedly asserts that the evidence presented at trial was insufficient to sustain his gross indecency convictions. Finally, he asserts that the jury instructions were erroneous because they equated the virginity checks to sexual acts, which effectively directed a verdict in favor of the prosecution.

The "concurrent sentencing doctrine" invests the court with discretion to decline to hear a substantive challenge to a conviction when the sentence the petitioner is serving on the challenged conviction is concurrent with an equal or longer sentence on a valid conviction. See *United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989). The standard guiding a court's discretion whether to apply the doctrine is the extent to which there may be adverse collateral consequences if the conviction is allowed to stand. See *Hughes*, 964 F.2d at 541.

Although the doctrine has its roots in direct appeals, the federal courts apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not result in a habeas petitioner's release from custody. See, e.g., *Cranmer v. Chapleau*, 1996 U.S. App. LEXIS 22453, 1996 WL 465025 (6th Cir. Aug. 13, 1996). "[A]dverse collateral consequences' such as 'delay of eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma[,]'" may be considered. *Buffin v. United States*, 513 F. App'x 441, 448 (6th Cir. 2013). In *Pillette v. Berghuis*, 408 F. App'x 873, 886 n.8 (6th Cir. 2010), the Court also included "an

effect on . . . a potential pardon" and "the potential for use as evidence of a prior bad act" as additional adverse consequences. *Id.* Such remote consequences, however, "are most salient on direct appeal, not on a collateral challenge." *Buffin*, 513 F. App'x at 448.

Petitioner's sentence for his gross indecency convictions is 17 months to 5 years, to run concurrently with his other longer sentences. Petitioner will discharge from the maximum term of his gross indecency sentences long before he reaches his minimum 25-year sentence for his CSC-1 conviction. Moreover, Petitioner would already be charged as a third-time habitual felony offender by virtue of his CSC-1 and CSC-2 convictions if he were to commit some hypothetical future felony offense. A grant of habeas relief with respect to his gross indecency convictions would therefore not affect the fact or duration of Petitioner's present or future confinement. Petitioner does not point to any other collateral consequences that will result from allowing his gross indecency convictions to remain. The Court will therefore exercise its discretion to not review the claims challenging these lesser convictions.

The Court will note briefly that, in any event, the Michigan Court of Appeals accurately described the record and reasonably rejected each of these claims as follows:

> In the instant case, the evidence permitted the jury to find that Overton caused a preteen girl to open her legs and spread open her vagina with her hands so that Overton could view her genitals from a distance of less than two feet for his own sexual gratification. Although this conduct may not have involved an overt sexual act, the evidence permitted the jury to find that it was sexual in nature, and that it was committed against a minor child without her consent. The victim testified that she did not want to expose her private parts to Overton. We reject Overton's attempt to characterize his conduct as involving nothing more than mere "voyeurism." The circumstances did not involve Overton merely seizing an opportunity to view the victim while unclothed, but rather involved him requiring the victim to submit to an inspection, against her will, during which she was required to expose and manually manipulate her genital area. Considering the surrounding circumstances, Overton's conduct qualifies as gross

indecency. Neither the private setting of Overton's conduct nor the absence of physical contact precluded designating his conduct as gross indecency. Accordingly, the evidence was sufficient to support Overton's convictions for gross indecency.

***

Overton argues that the trial court was required to instruct the jury not only that he performed the act in question, but also that the act in question was a sexual act. Overton also argues that the court was required to instruct the jury on how to determine whether the act was a sexual act. Viewed as a whole, the trial court's jury instruction adequately addressed both of these concepts. The court instructed the jury that it was required to find that Overton caused the victim to engage in a "sexual act." The court further instructed the jury that it was required to find that Overton performed the act with the intent to derive sexual gratification. These instructions adequately conveyed both that the prohibited act had to be sexual in nature and that Overton performed the act with the intent to derive sexual gratification. Contrary to what Overton argues, the trial court's instruction properly required the jury to determine whether a sexual act was committed. Moreover, Overton did not dispute that the charged conduct occurred, but instead denied that it involved a sexual purpose. The trial court's instructions clearly informed the jury that it could not convict Overton of the charged conduct unless it determined that he acted with the intent to derive sexual gratification. The court's instructions fairly presented the issues to be tried and adequately protected Overton's rights.

***

Overton argues that the gross indecency statute "does not provide fair notice of the conduct proscribed," and that his convictions of gross indecency are sustainable only if this Court's decision in *Drake*, 246 Mich. App. 637, is found to be valid. Overton contends that *Drake* was either wrongly decided or, if it was not, its holding must be limited to its facts. As previously discussed in section III. A. 3., the defendant's conduct in *Drake*, and Overton's conduct in this case, was conduct that reasonably may be regarded as sexual in nature. In this case, the prosecution presented evidence to support a finding that Overton caused a preteen girl to open her legs and spread open her vagina with her hands so that Overton could view her genitals from a distance of less than two feet. The case law addressing the gross indecency statutes, see section III. A. 3., supra, enabled Overton to fairly ascertain the scope and meaning of the statute and provided fair notice that this conduct was prohibited.

*Overton*, 2013 WL 5857775, at *9-13.

F. Petitioner's Videotaped Interview

Petitioner asserts that he was denied his right to present a defense when he was prohibited from presenting the videotaped recording of his interview with police. He argues that the video put into context his comment that his police officer co-workers would "kill him" if he they learned of the allegations against him. The prosecutor's questioning, he argues, suggested that his co-workers would be angry at him for his conduct, whereas he meant only they would "kill him with jokes."

The Michigan Court of Appeals denied the claim on the merits:

> At trial, the prosecutor asked Overton, a police officer, if he made a statement during his police interview "about what the guys would feel, if they knew what the allegations were?" Overton admitted making a statement indicating that they would "kill" him if they knew about the allegations. Overton explained in his testimony that he meant that other officers would harass and "kill [him] with jokes," such as placing "a box of tampons on my desk or something of that nature." Overton now argues that the trial court erred by refusing to admit his entire recorded police interview to allow the jury to consider the full context of his conversation with the police detective, during which he made the statement in question. Overton argues that the trial court was required to admit the entire recorded interview under MRE 106, which provides:

>> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

> MRE 106 "does not automatically permit an adverse party to introduce into evidence the rest of a document once the other party mentions a portion of it." *People v. Herndon*, 246 Mich. App. 371, 412 n.85 (2001). Rather, MRE 106 logically limits the supplemental evidence to evidence that "ought in fairness to be considered contemporaneously with it." *Id.* MRE 106 is "designed to prevent unfairness which may result if a statement is taken out of context." See *Moody v. Pulte Homes, Inc.*, 125 Mich. App. 739, 747 (1983), rev'd on other grounds 423 Mich. 150 (1985).

> We agree with plaintiff that because the trial prosecutor did not introduce any portion of a written or recorded statement, but rather only

questioned Overton about whether he made an oral statement to a police detective, MRE 106 does not apply. Even if it did apply, however, we do not believe that the trial court abused its discretion in determining that admission of the entire recorded interview was not necessary. The prosecutor merely asked Overton if he had made a statement. Overton acknowledged that he did, and he was given the opportunity to explain what he meant by the statement. The explanation was not part of the recorded interview. Under these circumstances, fairness did not require that the entire recorded interview be played for the jury. The trial court did not abuse its discretion by excluding the evidence.

*Overton*, 2013 WL 5857775, at *15-16.

Under clearly established Supreme Court law, "[t]e right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

> With regard to evidentiary rulings, the standard for habeas relief is not easily met. "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Moreover, such rulings "are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988)).

*Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017). "Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Id.* at 476.

The Michigan Court of Appeals found that the Michigan Rules of Evidence did not compel production of the entire recorded statement because the prosecutor did not admit any part of it, but rather she simply asked Petitioner whether he made the statement during the conversation with the investigating detective. Petitioner was not thereafter

prevented from presenting his own explanation for the statement during his testimony. In fact, he did just that. See Dkt. 5-10, at 207 ("Q: And you told Galeski, the cops you worked with, would kill you, if they knew the allegation? A: Kill me with jokes."); Id. at 208 ("Q. When you are talking about [] it means killing me with jokes. There is nothing funny about this, is there? A: No. But that I would be called Mr. Mom, that is what I was referring to. If you recall in the video, you would see that I say more about it, during the interview. Q: Did you tell Detective Galeski, that you didn't want to share this with the guys at work, because you would be harassed? A: Harassed with jokes, yeah."). Petitioner was given a fair opportunity to defend himself when he was allowed to explain the context in which his statements were made. The prosecutor did not assert that the explanation was a post-hoc rationalization, so there was no need for the videotape to be played to show that the explanation was made contemporaneously with the "kill me" comment. The state court reasonably rejected this claim.

## G. Effective Assistance of Trial Counsel

Petitioner raises a number of allegations of ineffective assistance of trial counsel. He argues that this counsel: (1) failed to assert his lack-of-notice claim as to the CSC-1 charge, (2) failed to challenge the jury instructions regarding the CSC-1 charge, (3) failed to request a unanimity jury instruction as to the CSC-2 charge, (4) failed to investigate and interview two witnesses who would have undermined the victim's credibility, (5) failed to object to inadmissible opinion testimony that Petitioner was not parenting the victim during the incidents, and (6) failed to object to the prosecutor's elicitation of opinion testimony from Petitioner on cross-examination.

When reviewing a state court's denial of an ineffective-assistance-of-counsel claim under *Strickland*, federal courts undertake a "doubly deferential" standard of review. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). The *Strickland* analysis is itself "highly deferential" to counsel's performance. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance," and the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). When reviewing a state court's decision under 28 U.S.C. § 2554(d), "review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Woods*, 135 S. Ct. at 1376. "The question [on habeas review] is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

## 1. Claims Regarding CSC-1 Charge

Petitioner first asserts that his counsel failed to assert his lack-of-notice claim to the trial court and failed to object to the CSC-1 instruction allowing for defendant-directed self-penetration to constitute sexual penetration. As discussed above, those claims are without merit. Trial counsel was not ineffective for failing to present these claims to the trial court. See *Bradley v. Birkett*, 192 F. App'x. 468, 475 (6th Cir. 2006).

## 2. Unanimity Instruction

Petitioner asserts that his counsel was ineffective for failing to request an instruction regarding unanimity as to which act constituted CSC-2. He asserts there is chance that the jury did not unanimously agree whether the shaving or ointment acts were

performed for a sexual purpose, and that he might have been acquitted of the CSC-2 charge if the jury had been instructed that they had to agree on which act constituted the offense.

In addressing Petitioner's related jury-instruction claim, the Michigan Court of Appeals indicated that federal and Michigan law required only a general unanimity instruction, and that given the prosecutor's theory in the instant case, a more specific instruction was not warranted:

> The trial court instructed the jury that "[a] verdict in a criminal case must be unanimous. In order to return a verdict, it is necessary that each of you agrees on that verdict." Overton argues that because the evidence referred to two distinct acts (shaving the victim's pubic area and applying an ointment to the victim's pubic area), each of which could have individually established a basis for a second-degree criminal sexual conduct conviction, the trial court erred by failing to instruct the jury that it was required to unanimously agree on the act that formed the basis for any conviction. Overton argues that the absence of such an instruction violated his right to a unanimous verdict because it is possible that some jurors voted to convict him on the basis of the shaving incident, while others voted to convict him on the basis of the ointment application.

> * * *

> We are persuaded by the foregoing federal and state authority that if alternative acts allegedly committed by a defendant are presented by the state as evidence of the actus reus element of the charged offense, a general instruction to the jury that its decision must be unanimous will be adequate unless 1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is a reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt. [*People v. Cooks*, 446 Mich. 503, 512-513 (1994)].

> Here, no party materially distinguished Overton's conduct in regard to the shaving and ointment application incidents. The victim's testimony indicated that these acts were temporally linked and related in purpose. According to the victim, the ointment application occurred immediately after Overton shaved her pubic area, because the shaving caused razor bumps

to the shaved area. Although Overton admitted shaving the victim's inner thighs, he denied shaving her pubic area or applying ointment. Further, Overton denied that his conduct in relation to this incident was intended for a sexual purpose. Rather, he claimed that he only intended to assist the victim in removing unwanted hair from her "bikini" line. Because the testimony indicated that the ointment application occurred as a consequence of the pubic shaving, and Overton denied committing both acts, there was no reason for the jury to view these acts as materially distinct. There is no reason to believe that a juror would find that Overton applied ointment without also finding that he shaved the victim's pubic area. Further, because the testimony indicated that the ointment application was intended to treat the razor bumps, there was no reason for the jury to find that Overton's intent with respect to either act would have been any different. Because these circumstances did not create a danger that the jury would divide as to which act Overton committed, the trial court's general unanimity instruction was sufficient, and a more specific unanimity instruction was not required. *Cooks*, 446 Mich. App at 512–513.

*Overton*, 2013 WL 5857775, at *10-12.

The state court went on to find that Petitioner's counsel did not perform deficiently by requesting a more specific instruction because "the general unanimity instruction was sufficient." *Id.* at *13.

Petitioner had no clearly established constitutional right to have the jury agree on the pieces of evidence that proved he committed CSC-2. "Juries are typically called upon to render unanimous verdicts on the ultimate issues of a given case. But it is understood that different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring) (footnote omitted). Simply stated, "juries are not required to agree on the theory of guilt." *Rogers v. Howe*, 64 F. App'x 450, 454 (6th Cir. 2003). It is acceptable for a conviction to be based on two alternative theories "even if there is no basis to conclude which one (if only one) the jury

used." *Coe v. Bell*, 161 F.3d 320, 348 (6th Cir. 1998) (citing *Schad v. Arizona*, 501 U.S. 624, 631 (1991). Petitioner's counsel was not ineffective for failing to challenge the general unanimity instruction which was correct as a matter of state and federal law.

## 3. Defense Witnesses

Petitioner asserts that his counsel was ineffective for failing to investigate and call two defense witnesses, Amirra Thabet and Ashley Gazdowicz, whom the victim claimed to have told about the sexual assaults. He claims that both witnesses would have testified at trial that the victim did not tell them about the incidents. Petitioner supported the claim in the state courts with only an affidavit from a private investigator who interviewed Thabet at the request of trial counsel on the last day of trial.

The trial court denied Petitioner an evidentiary hearing and relief with respect to this claim, stating "you don't support [it] with anything, in fact." Dkt. 5-19, at 13. The Michigan Court of Appeals then denied the claim after Petitioner again failed to make a sufficient evidentiary proffer:

> Overton next argues that counsel was ineffective for failing to interview and call two specific witnesses to determine whether their testimony could be used to impeach the victim's testimony. As explained previously, failure to call a witness does not constitute ineffective assistance of counsel unless it deprives the defendant of a substantial defense. *Dixon*, 263 Mich. App. at 398. A defendant claiming ineffective assistance based on the failure to call a witness must provide factual support for his claim that the witness's testimony would have supported a substantial defense. *Pratt*, 254 Mich. App. at 430. Overton has not supplied offers of proof to overcome the presumption of sound strategy and has not shown that the failure to call either witness deprived him of a substantial defense.

*Overton*, 2013 WL 5857775, at *13.

The United States Supreme Court has held that habeas review under 28 U.S.C. § 2254(d) is "limited to the record that was before the state court that adjudicated the claim

on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In his motion for new trial, Petitioner presented the state court with an affidavit from a private investigator indicating that trial counsel sent him to interview Thabet on the final day of trial, and that Thabet told him that the victim told her about the virginity check incident with Petitioner and the victim's mother, but she did not tell her about the other incidents. Dkt. 5-15, Exhibit A. Petitioner did not proffer any statement from Thabet herself, however. Moreover, no offer of proof was made at all as to the contents of Gazdowicz's proposed testimony. Petitioner made no additional offer of proof to the Michigan Court of Appeals, and he makes none here.

Petitioner is not entitled to relief on his claim because he failed to provide to the Michigan courts or to this Court affidavits from any of his proposed witnesses concerning their proposed testimony and willingness to testify on Petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. See *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). In failing to attach any offer of proof or any affidavits sworn by the proposed witnesses, Petitioner offered neither to the Michigan courts nor to this Court any evidence beyond his own assertions and that of a private investigator as to whether the witnesses would have testified and what the content of these witnesses' testimony would have been. Without such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. See *Clark v. Waller*, 490 F. 3d 551, 557 (6th Cir. 2007).

*4. Testimony Petitioner was not Acting as a Parent*

Petitioner next argues that his counsel was ineffective for failing to object to the prosecutor eliciting testimony from Amanda Doss, the child protective services worker, that it was not her opinion that Petitioner was acting as a parent when he performed the complained-of actions. The Michigan Court of Appeals denied the claim:

> Overton next argues that defense counsel was ineffective for failing to object to the prosecutor's conduct of eliciting Doss's testimony "as to the ultimate issue of guilt" in this case. We disagree. A review of the challenged testimony reveals that Doss did not provide an opinion on Overton's guilt or innocence, or any ultimate issue in the case. Doss merely expressed that she did not share the same opinion as Pope regarding whether Overton was being a parent to the victim. Doss did not further offer any opinion regarding Overton's conduct, let alone his guilt or innocence. It was not unreasonable for counsel to determine that an objection to Doss's brief testimony was not necessary.

*Overton*, 2013 WL 5857775, at *14.

The record shows that during Doss's direct examination, she testified about her interview with Pope, during which they discussed the allegations against Petitioner. Pope and Petitioner's matter-of-fact responses that the incidents occurred informed her decision to remove the victim and her brother from Pope's home. Pope responded to the allegations by giving her opinion that Petitioner was merely helping her, and that he was "being a parent" to the victim. Dkt. 5-9, at 31. The prosecutor asked Doss-Fritz whether her opinion was the same, and Doss answered, "No, it was not." Id. Doss went on to testify about her follow-up interview with Petitioner where he also admitted that the incidents occurred. Id. at 31-32.

Contrary to Petitioner's interpretation of the record, the testimony was not offered as unqualified expert testimony that Petitioner's actions were not the justifiable actions of a parent. Rather, the questions and answers provided background for how the allegations

came to light, that Doss did not believe the innocent explanation offered by Pope and Petitioner, and that their response to the allegations led Doss to remove the children from the home. The state court reasonably found that counsel was not ineffective for failing to object to this proper testimony.

*5. Petitioner's Opinion Testimony*

Petitioner next asserts that his counsel was ineffective for failing to object to the prosecutor eliciting testimony during cross-examination regarding his own opinion on whether his actions were unlawful. The Court of Appeals rejected this allegation:

> Overton also argues that counsel was ineffective for failing to object when the prosecutor cross-examined him regarding his knowledge of whether his charged conduct was unlawful. We disagree with Overton's argument that the prosecutor's line of questioning required him to provide a de facto expert opinion on his own guilt. The prosecutor did not ask Overton to give an expert opinion as to whether his actions were illegal. The line of questioning concerned Overton's own personal knowledge, which was relevant to his intent and state of mind. Counsel was not ineffective for failing to make a futile objection to this proper cross-examination. *People v. Fike*, 228 Mich. App. 178, 182 (1998).

*Overton*, 2013 WL 5857775, at *15.

Petitioner does not indicate with any particularity which questions on cross-examination were objectionable. See Dkt. 1, at Page ID 103-105. Nevertheless, the Court discerns no basis for an objection on the grounds asserted by Petitioner. The prosecutor's line of attack on cross-examination seemed to be focused on discrediting Petitioner's contention that he was innocently teaching the victim about feminine hygiene. The prosecutor suggested that Petitioner's true motives were sexual and not hygienic, by asking such things as: "Now, would you agree, that as a boyfriend of a mother, of a child, that you were a little too involved in [the victim's] private area?" dkt. 5-10, at 202; "Could you . . . say to her . . . I am not your father. Go talk to your mother?" Id. at 203. The

prosecutor did not elicit improper opinion testimony from Petitioner, and counsel was not ineffective for failing to object.

## H. Effective Assistance of Appellate Counsel

Petitioner asserts that his appellate counsel was ineffective for failing to raise the claims that were presented to the state courts for the first time in his motion for relief from judgment. For the reasons stated above, however, those claims are without merit. Therefore, appellate counsel was not ineffective for failing to raise them on direct appeal.

## I. Cumulative Error

Petitioner argues that the cumulative effect of his attorneys' alleged errors deprived him of his right to a fair trial. First, the Court has found no errors that could be cumulated to provide relief. Second, "the Supreme Court has not recognized cumulative error as a basis for relief in non-capital cases." *Kissner v. Palmer*, 826 F.3d 898, 903-04 (6th Cir. 2016) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)).

As none of Petitioner's claims merit relief, the petition will be denied.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

Given the two dissenting opinions by the Michigan Supreme Court, the Court finds that reasonable jurists would debate whether Petitioner had constitutionally adequate notice that his conduct violated the CSC-1 statute. Petitioner's other claims do not deserve encouragement to proceed further. The Court will therefore grant Petitioner a certificate of appealability only with respect to the lack-of-notice claim challenging his CSC-1 conviction. See Dkt. 1 at Page ID 13, 54-59.

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **GRANTS** a certificate of appealability with respect to Petitioner's lack-of-notice claim, and 3) **DENIES** a certificate of appealability with respect to his other claims.

**SO ORDERED.**

X _Nancy Edmunds_
Hon. Nancy G. Edmunds
United States District Judge

Dated: 5-4-19